**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 96-11537

_____


H R MANAGEMENT COMPANY,

Plaintiff-Appellant

VERSUS

ZURICH INSURANCE COMPANY, ET AL,

Defendants

ZURICH INSURANCE COMPANY,

Defendant-Counter Claimant-Appellee

VERSUS

ATLANTIC LLOYDS INSURANCE COMPANY OF TEXAS, INC.,

Counter Defendant-Appellant


_____

No. 96-10987

_____


H R MANAGEMENT COMPANY,

Plaintiff-Appellant-Cross Appellee

VERSUS

                 ZURICH INSURANCE COMPANY, ET AL,

                                                    Defendants

                 ZURICH INSURANCE COMPANY,

                              Defendant-Counter Claimant-Appellee
                              Cross Appellant


                              VERSUS


         ATLANTIC LLOYDS INSURANCE COMPANY OF TEXAS, INC.,

                              Counter Defendant-Appellant
                              -Cross Appellee

_____

            Appeal from the United States District Court
               For the Northern District of Texas
                        (3:93-CV-2059-T)
_____

                        February 10, 1998
Before  JOLLY, DUHÉ, and PARKER, Circuit Judges.

JOHN M. DUHÉ, JR., Circuit Judge:[1]

    H R Management ("HRM") sued Zurich Insurance ("Zurich") for
settling claims against two of its co-insureds and thereby
exhausting the policy limit of liability.  HRM claimed breach of
contract and the duty of good faith and fair dealing, deceptive
trade practices under the Texas Deceptive Trade Practices Act
("DTPA"), Texas Insurance Code violations, tortious interference
with contract, and civil conspiracy.  The district court granted

_____

    [1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5TH CIR. R. 47.5.4.

                                2

summary judgment in Zurich's favor.  HRM appeals.

## I.

Westwood Savings and Loan Association ("Westwood") owned Fondren Green Apartments in Houston, Texas.  Westwood hired HRM to manage the apartments which HRM did until January 1987.  On that date, Westwood hired RFG Management ("RFG") to manage the apartments.

Westwood had an insurance policy with Zurich which provided Westwood with comprehensive general liability coverage from April 1, 1986 to April 1, 1987.  The policy included a provision adding as an insured any person or organization who acted as Westwood's real estate manager.  In addition, HRM had an excess insurance policy with Atlantic Lloyd's Insurance ("Atlantic").

In 1988, former Fondren Green tenants and employees sued Westwood, HRM, and RFG for damages allegedly caused by spraying chlordane, a toxic chemical, in the apartments.  In 1991, Zurich accepted the Fondren Green plaintiffs' offer to settle completely their claims against Westwood and RFG.  Zurich paid the plaintiffs $1 million, the limit of liability stated in the policy.  After Zurich settled, it withdrew from participating further in HRM's defense; however, Atlantic continued to defend HRM.  HRM later settled with the Fondren Green plaintiffs for $10.3 million which Atlantic paid.

In 1993, HRM sued Zurich claiming that Zurich breached its

3

contract with HRM by paying all policy benefits on behalf of RFG and Westwood.  Zurich counterclaimed against HRM and added Atlantic as a third party.  Zurich also sought a declaratory judgment as to the rights and duties of the parties under Zurich and Atlantic's policies as well as subrogation, contribution, and indemnity from Atlantic.

HRM moved for partial summary judgment on the breach of contract claim to which Zurich responded by filing a cross-motion for summary judgment.  HRM then moved for partial summary judgment a second time arguing that Zurich had not exhausted the policy's limit before it withdrew from defending HRM.  Zurich responded by moving for summary judgment on the breach of contract and duty of good faith and fair dealing claims as well as the insurance code violations, tortious interference, and civil conspiracy claims.  Zurich also filed a cross motion for summary judgment responding to the second motion for partial summary judgment.  There, Zurich successfully argued that the pollution exclusion clause precluded coverage.  The court dismissed Zurich's counterclaim for declaratory judgment without prejudice and dismissed as moot Zurich's counterclaim for subrogation, contribution, and indemnity.  HRM and Atlantic appealed, and the cases were consolidated.

## II.

### A. STANDARD OF REVIEW

4

Although both parties failed to include in their briefs this required information, we review a grant of summary judgment <u>de novo</u>. <u>Lulirama Ltd, Inc. v. Axcess Broad. Serv., Inc.</u>, 128 F.3d 872, 876 (5th Cir. 1997); <u>Texas Manufactured Hous. Ass'n v. City of Nederland</u>, 101 F.3d 1095, 1099 (5th Cir. 1996), <u>cert.</u> <u>denied</u>, 117 S. Ct. 2497 (1997). A court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits. . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PRO. 56(c).

**B. ANALYSIS**

Although the district court granted summary judgment based on the Zurich policy's pollution exclusion clause, we affirm on other grounds. Therefore, we assume <u>arguendo</u> that the pollution exclusion clause does not apply.

Zurich argues that even if the policy covers HRM, it owes HRM nothing because it properly exhausted the policy's $1 million limit when it settled all claims against RFG and Westwood. Moreover, Texas law does not require it to divide the policy limit among multiple insureds. <u>See</u> <u>Texas Farmers Ins. Co. v. Soriano</u>, 881 S.W.2d 312 (Tex. 1994). There the Texas Supreme Court held that an insured may enter into a reasonable settlement with one of several claimants even though the settlement exhausts the proceeds available to satisfy other claims. <u>Id.</u> at 315.

5

HRM argues that Soriano is distinguishable because that case dealt with multiple claimants not multiple insureds. Moreover, it argues, Zurich had a contractual duty to treat all three insureds equally. Thus, by settling only claims against RFG and Westwood, Zurich breached its contract. In support of that argument, HRM cites the following policy provision:

> "'Insured' means any person or organization qualifying as an insured in the 'person insured' provision of the applicable insurance coverage. The insurance afforded applies separately to each insured against whom claim is made or suit is brought, *except with respect to the limits to the company's liability*. . . *Except with respect to the Limits of Insurance* and any rights or duties specifically assigned in this policy to the first 'Named Insured', this insurance applies: (1) As if each 'Named Insured' were the only 'Named Insured'; (2) Separately to each 'Insured' against whom the claim is made or 'suit' is brought." [emphasis added]

HRM asks this Court to interpret this language to mean that Zurich had to divide the $1 million coverage equally among its insureds. We disagree.

First, the policy specifically states that the insurance afforded applies to each insured separately, but only to the limits of the policy. Therefore, if $1 million is the limit of the policy[2], then Zurich had a contractual duty to treat HRM, RFG, and Westwood separately but only until it paid the policy limit.

---

[2]HRM argues that the policy was not exhausted because the million dollar limit is per occurrence and there were two occurrences. Thus, the policy limit is two million dollars. We address that argument below.

However, we do not look only to the language of the policy itself.

As Zurich argues, HRM's attempts to distinguish Soriano from this case fails. The fact that here there are multiple insureds while Soriano involved multiple claimants is a difference without a distinction. In Soriano, the Texas Supreme Court held that the insurer was not negligent or acting in bad faith when it settled with one claimant which then reduced the amount it could pay the other, more seriously injured claimant. Soriano, 881 S.W.2d at 314. As the Court pointed out, under Texas law an insurer must settle with a claimant if the settlement demand is 1) within the scope of coverage; 2) within policy limits; and 3) reasonable such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment. Id., citing American Physicians Ins. Exchange v. Garcia, 876 S.W.2d 842, 848-49 (Tex. 1994), and G.A. Stowers Furniture Co. v. American Indem. Co., 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved). Thus, under Texas law Zurich had to settle with RFG and Westwood's claimants as long as the settlement fit the American Physicians criteria. We hold that the RFG and Westwood settlement fit those criteria. First, the demand was within the scope of coverage. While arguably the pollution exclusion clause could preclude coverage, the defense is for Zurich to assert. Since it did not assert that defense, Zurich acknowledged that the claim was within the scope of coverage. Second, the demand of $1 million was within the policy limit.

7

Finally, the demand was reasonable. HRM settled its claims for $10.3 million; therefore, settling similar claims for only $1 million is eminently reasonable. Because the settlement demands fall within the criteria, Zurich had a duty under Texas law to settle with the RFG and Westwood claimants for $1 million. As the Texas Supreme Court stated, "an insurer may enter into a reasonable settlement with one of the several claimants even though such settlement exhausts . . . the proceeds available to satisfy other claims." Soriano, 881 S.W.2d at 315. We are persuaded that the same holds true with multiple insureds.

HRM's next argument is that even if the above is true, Zurich still breached its contract because the policy limit was not exhausted. HRM contends that the policy limit was $1 million per occurrence. Because HRM and RFG each sprayed chlordane in the Fondren Apartments once, there were two occurrences. Thus, the policy limit is $2 million. However, this argument ignores the clear language of the policy. The policy schedule clearly states that the aggregate limit of the policy is $1 million. Therefore, we hold that once Zurich settled RFG and Westwood's claims for $1 million it exhausted its policy limits.

HRM claims damages in the form of attorney's fees incurred by reason of Zurich's failure to defend. HRM, however, suffered no damages because its defense costs were paid by its other insurer, Atlantic.

We affirm the district court's grant of summary judgment in

8

favor of Zurich.  We also affirm the district court's holding that Zurich prevailed in this proceeding, hence is entitled to recover its court costs.  As a result, the district court's dismissal without prejudice of Zurich declaratory judgment as well as its dismissal of Zurich's counterclaims is also affirmed.

As for the motions filed with this Court, we grant the motions to supplement the record and to file exhibits under seal, but we deny Zurich's motion for sanctions.

AFFIRMED.